(387 P.3d 185)

No. 115,531

LORI LEANN MANLEY, Individually and as Special Administrator for the ESTATE OF DARREN R. MANLEY, Deceased, AMANDA TUBBS, and DERRICK MANLEY, *Appellants*, v. STEVEN B. HALLBAUER and KATHIE M. HALLBAUER, *Appellees*.

Opinion filed December 23, 2016.

*Fred Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, for appellants.

*Vince P. Wheeler*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellees.

Before HILL, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: One afternoon in September 2011, in a rural part of Labette County, Darren Manley was driving north on one gravel road while John Patton was driving west on another, and their trucks collided at the unsigned intersection of those two roads. Manley was killed. His family, through his estate, sued the County, Patton, and the Hallbauers, who own the property at the southeast corner of the intersection.

The Manleys settled with both the County and Patton. Everyone agrees that at the time of the accident, trees and vegetation growing on the Hallbauers' property obstructed the view of drivers traveling where Manley and Patton had been. The district court granted

the Hallbauers' motion for summary judgment, finding that under Kansas caselaw, landowners don't owe a duty to drivers to maintain visibility at intersections by trimming the trees on their property. We must determine whether its legal ruling—that the owner of a rural property doesn't have a duty to cut down or trim trees on the property so that drivers have good visibility at an adjacent intersection—was correct.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts aren't substantially contested. On the afternoon of September 14, 2011, at the intersection of Anderson Road and 20000 Road in Labette County, Darren Manley was killed when his truck collided with John Patton's truck. Manley was headed north on Anderson Road, which runs north and south. Patton was headed west on 20000 Road, which runs east and west. Both are gravel roads.

The intersection did not have any traffic signs. A professional engineer testified that he thought the roads carried fewer than 400 cars a day, making them both "low volume" roads. Labette County's director of public works likewise testified that her office had studied the average daily traffic of these two roads in January 2015 and found they were both "low volume" roads. The engineer also noted that it wasn't uncommon for rural intersections in Labette and surrounding counties to have restricted visibility due to crops or trees. According to the officers who investigated the accident, there was no evidence that either driver had tried to brake or evade the collision.

The Hallbauers own and live on about 11 acres of land at the southeast corner of the Anderson/20000 intersection. At the time of the accident, a row of trees stretched along their property line from the intersection to the south, and another row followed their property line from the intersection to the east. According to the officers who investigated the accident, there were also more trees in the interior of the property, "making it impossible for westbound traffic to see approaching northbound traffic" and vice versa. The Manleys' engineering expert said he believed that the accident was caused by the lack of traffic signs and the obstructed visibility created by the Hallbauers' trees.

The trees had been on the Hallbauers' property when they bought the land in 2006 and hadn't changed much since then. The Hallbauers knew that the trees obstructed the view at the intersection, and they had been slowly cutting them down over time. Steven Hallbauer said that from the intersection heading south, the view was completely obstructed for 50 or 60 feet. But until this accident, the Hallbauers hadn't received any complaints from the County or anyone else about the trees on their property. And according to Labette County's director of public works, this crash was the first two-vehicle accident at this intersection.

After the accident, Manley's estate, through his wife, son, and daughter, brought a wrongful-death lawsuit against Labette County, Patton (the driver of the other car), and the Hallbauers. The Manleys settled their claims against Patton and the County.

The Hallbauers filed a motion for summary judgment, arguing that they didn't owe a duty to drivers to trim the trees on their property to maintain visibility at the intersection and therefore weren't liable for Manley's death in the car accident. The district court agreed; it granted the Hallbauers' motion and certified its judgment as final under K.S.A. 2015 Supp. 60-254(b).

The Manleys have appealed to our court.

## ANALYSIS

The Manleys argue that the Hallbauers owed a duty to Manley to trim their trees to maintain visibility at the intersection and that the district court was wrong to conclude otherwise. Everyone agrees that, factually, the Hallbauers' trees blocked visibility at the intersection. The question here is whether the law required the Hallbauers to do anything to remedy that situation. In other words, did the Hallbauers owe a duty to Manley?

The existence of a duty is a question of law. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009). Because it's a question of law and not a contested factual issue, it was appropriate for the district court to grant summary judgment on this question and rule on it without a full trial. See *Drouhard-Nordhus, v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015) (summary judgment appropriate when there's no genuine issue of material fact); *Martin*

*v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013) (summary judgment in negligence cases appropriate only for questions of law). We owe no deference to the district court's conclusion on a question of law and must independently review whether the Hallbauers owed a duty to Manley to cut down the trees on their land to improve or maintain visibility at the intersection of Anderson and 20000 Roads. See 297 Kan. at 245.

The underlying legal claim is for negligence. A negligence claim requires (1) the existence of a duty, (2) the breach of that duty, (3) an injury, and (4) sufficient causal connection between the duty breached and the injury sustained (a concept lawyers call "proximate causation"). *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007). Where a duty exists, a person generally has the duty to act as a reasonably prudent person would act in similar circumstances. See *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 272, 130 P.3d 555 (2006); *Wozniak v. Lipoff*, 242 Kan. 583, 607, 750 P.2d 971 (1988).

But that duty doesn't extend to everyone in the world. In Kansas, courts apply a foreseeability test: A person owes a duty if (1) the plaintiff is a foreseeable plaintiff and (2) the probability of harm is foreseeable. *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 920-21, 257 P.3d 287 (2011). In other words, "[t]he duty of care is intertwined with the foreseeability of harm." *Shirley v. Glass*, 297 Kan. 888, 900, 308 P.3d 1 (2013); see *Berry*, 292 Kan. at 920-21. So an individual must act like a reasonably prudent person toward another individual *if* there is some sort of relationship between the two individuals that justifies imposing a legal obligation on one for the benefit of the other—a relationship based on foreseeability. See Prosser and Keeton, Law of Torts § 53 (5th ed. 1984). In this case, then, the question is whether the relationship between landowners and drivers on adjacent roads creates a duty: Would a reasonable landowner have foreseen a probability of harm to motorists from the obstructed view?

Obstructed visibility at an intersection creates a risk to people who drive on the roads, so Manley, because he was just such a driver, was a foreseeable plaintiff. But was the harm itself sufficiently foreseeable? Was the risk such that a *reasonable* person would have

done something about it? *Durflinger v. Artiles*, 234 Kan. 484, 489, 673 P.2d 86 (1983).

On one hand, the risk created by obstructed visibility at an intersection is the risk of a car accident, which is exactly what happened here. The Hallbauers did know that the view was obstructed and agreed that a stop sign would have made the intersection safer. On the other hand, these roads weren't heavily traveled, the County had no record of any two-car accidents at the intersection until this one, and the Hallbauers had received no complaints in the 5 years they had owned the property about their trees obstructing the view. The County's director of public works also implied that she hadn't received any complaints about visibility at this intersection (if she had, she would have taken them to the Hallbauers, and they never received any complaints from the County).

Additionally, when visibility is obstructed, drivers generally have a responsibility to drive with more caution. See *Toumberlin v. Haas*, 236 Kan. 138, 144, 689 P.2d 808 (1984) (quoting *Lyke v. State Highway Comm.*, 160 Kan. 709, 711, 165 P.2d 228 [1946]); *McCleary v. Boss*, 24 Kan. App. 2d 791, 794-95, 955 P.2d 127 (1997). This point is related to the long-standing rule that landowners don't have a duty to protect people who enter their property from open and obvious dangers. *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991) (relying on Restatement [Second] of Torts § 343A [1965]). Rather than placing a duty on the landowners, this rule assumes that people should be able to protect *themselves* from open and obvious dangers, and it's related to foreseeability because a person may reasonably assume that others will protect themselves from open and obvious dangers. Restatement (Second) of Torts § 343A, comment e (1965). Here, these rules would suggest, it was reasonable for the Hallbauers to assume that drivers approaching this intersection would see that visibility was obstructed and would proceed with extra caution, making an accident less foreseeable. See, *e.g.*, *Toumberlin*, 236 Kan. at 144.

So, returning to the question at hand, would a reasonable landowner have foreseen a probability of harm to motorists from the obstructed view?

We start our review with two Kansas Supreme Court cases that

have addressed the question of whether landowners owe a duty to drivers to trim vegetation to maintain visibility at an intersection. The Hallbauers contend—and the district court ruled—that these two cases control the outcome here, but we are less certain. The cases are from an earlier time—the age when transportation moved from the horse and buggy to the automobile.

The first case, *Goodaile v. Cowley County*, 111 Kan. 542, 207 P. 785 (1922), arose in 1922. The plaintiff, in a horse-drawn buggy, was injured at an intersection when a car appeared suddenly from behind a hedge and startled the horse. The plaintiff argued that the landowner was responsible for her injuries because the hedges blocked the view of the other road, but the court disagreed, finding that the startled horse caused her injury, not the obstructed view. 111 Kan. at 543, 545. Three years later, in *Bohm v. Racette*, 118 Kan. 670, 236 P. 811 (1925), a fatal car accident occurred at an intersection with visibility blocked by high hedges. The court followed *Goodaile* and held that landowners weren't liable for injuries caused by vegetation that obstructed road visibility. 118 Kan. at 671. From these precedents, the Hallbauers argue that a landowner has no duty to trim hedges or trees that block the view of drivers on an adjacent roadway. Indeed, on very different facts, our court relied on *Goodaile* to find that an accident wasn't caused by allegedly obstructing vegetation. See *McCleary*, 24 Kan. App. 2d at 794-95.

But *Goodaile* and *Bohm* are not all that similar to our case. First, the plaintiffs in those cases argued that the duty was created by a statute requiring landowners to trim their hedges, and the court found no duty based on the statute—the court didn't discuss whether a general common-law duty might exist. *Bohm*, 118 Kan. at 671; *Goodaile*, 111 Kan. at 543-44; see also *McCleary*, 24 Kan. App. 2d at 794 (plaintiff relied on K.S.A. 8-2011[a] to create duty and court found no duty); *Thiessen v. Union Pacific R.R. Co.*, No. 76,152, 1997 WL 377342 (Kan. App.), *rev. denied* 262 Kan. 969 (1997) (holding, based on *Goodaile*, that K.S.A. 8-2011[a] doesn't create a duty). Here, the Manleys argue that the Hallbauers owe a general common-law duty not based on any statute—in other words, they argue for a different kind of duty than what *Goodaile*

and *Bohm* address. We have not found a Kansas appellate opinion that specifically addresses whether landowners have such a common-law duty.

Second, the holdings in *Goodaile* and *Bohm* are not explicitly about duty; instead, the court in both cases phrased its holding in terms of the landowners' ultimate liability—for example, "the owners of the land are not liable in damages" for the plaintiff's injury—and did not focus on whether the lack of liability was based on a finding of no duty or no proximate cause. *Goodaile*, 111 Kan. 542, Syl. ¶ 1; see *Bohm*, 118 Kan. 670, Syl. ¶ 1. Duty and proximate cause are separate and necessary elements of a negligence claim. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585-86, 214 P.3d 1173 (2009). Because they are related concepts in tort law, courts often discuss them together, Prosser and Keeton, Law of Torts § 53, and Kansas law applies a foreseeability test on both the duty and proximate-cause elements. See *Berry*, 292 Kan. at 920 (applying foreseeability to duty analysis); *Hale v. Brown*, 287 Kan. 320, 322-23, 197 P.3d 438 (2008) (applying foreseeability to proximate-cause analysis).

In this context, we think it questionable that proximate-cause holdings or nonspecific liability holdings from the 1920s should control our ruling on the specific issue—involving duty—in this case. The *Goodaile* court's reasoning seems substantially based on proximate cause: "Even if . . . the high hedges were in part the cause of the accident which resulted in the plaintiff's injury, it cannot be said that they were the efficient intervening cause of the accident. The horse was frightened by an automobile. That was what caused the accident." 111 Kan. at 545. The *Bohm* court is less clear because it simply followed *Goodaile*: "[*Goodaile*] was based on negligence of the owner for not trimming the hedge as required by law, and the principle there declared controls here." 118 Kan. at 671. In summary, we can't say that *Goodaile* and *Bohm* actually control the specific question here, about duty—but we must acknowledge that from a broader perspective, those cases dealt with the same factual situation that we have here and ultimately did not hold the landowners liable. See *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078

(2016) (noting that the Court of Appeals is required to follow Kansas Supreme Court precedent).

So where do we turn to determine whether the Hallbauers had a duty to cut down the trees that obstructed the views of drivers approaching the intersection? The American Law Institute has for many years adopted "Restatements" of the law in various areas, including torts. Its Restatement (Second) of Torts, issued in 1965, provides that a rural landowner has no liability for physical harm caused to someone outside the land itself when the injury was caused by a natural condition of the land, like trees. Restatement (Second) of Torts § 363 (1965). This rule was consistent with a common-law rule that landowners generally don't owe a duty to drivers to cut down naturally occurring vegetation that obstructs the view at an intersection. See Prosser and Keeton, Law of Torts § 57 (5th ed. 1984) (noting that most states don't impose liability in this circumstance). On the other hand, the newer Restatement (Third) of Torts would sometimes make the landowner liable—if the landowner knew of the risk or the risk was obvious. Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 54 (2012).

For several reasons, we find the position of the Second Restatement persuasive here. First, the Kansas Supreme Court has applied the Second Restatement many times. *E.g., City of Neodesha v. BP Corporation*, 295 Kan. 298, Syl. ¶¶ 6-8, 287 P.3d 214 (2012) (applying Second Restatement to claim of damage due to abnormally dangerous activity); *Sall v. T's, Inc.*, 281 Kan. 1355, Syl. ¶¶ 3-5, 136 P.3d 471 (2006) (applying Second Restatement to claim of failure to perform a duty a party has voluntarily undertaken); *Long v. Turk*, 265 Kan. 855, 861-62, 962 P.2d 1093 (1998) (applying Second Restatement to claim that special care must be used regarding inherently dangerous items); *Werner v. Kliewer*, 238 Kan. 289, Syl., 710 P.2d 1250 (1985) (applying Second Restatement to invasion-of-privacy claim). Second, the Third Restatement is based on a general formulation of negligence principles that is contrary to Kansas law: The Third Restatement does not use a foreseeability analysis to determine whether a duty exists. Restatement (Third) of Torts § 7, comment j (2010); § 54, comment a (2012).

We have noted that the Third Restatement's method of analyzing liability for negligence differs from Kansas law and have declined to follow the Third Restatement previously. *Hale v. Brown*, 38 Kan. App. 2d 495, 499-500, 167 P.3d 362 (2007), *aff'd* 287 Kan. 320, 197 P.3d 438 (2008); see also *Delaney v. Deere and Co.*, 268 Kan. 769, 787-93, 999 P.2d 930 (2000) (applying Second Restatement rule while rejecting Third Restatement comment as contrary to Kansas law). Third, as the Kansas Supreme Court has noted, we are looking to see whether the person whose conduct is at issue "'should have foreseen the *probability* that injury might result.'" (Emphasis added.) *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 337-38, 918 P.2d 1274 (1996) (quoting *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 351, 837 P.2d 330 [1992]). On a lightly traveled gravel road in a rural area, there isn't a reasonable probability that injury might result. See *Hale*, 38 Kan. App. 2d at 497 (noting that probability in the context of foreseeability for proximate cause may sometimes be found when events are likely to occur less than half the time but still requires some likelihood, not a mere possibility). We conclude that the no-liability, no-duty rule found in Restatement (Second) of Torts section 363 is consistent with Kansas law generally and with the Second Restatement provisions Kansas has applied, and we will follow it here.

We also find it persuasive that several other states have found no duty in these circumstances. *E.g.*, *Driggers v. Locke*, 323 Ark. 63, 70-72, 913 S.W.2d 269 (1996) (landowner owes no duty to users of roadway to trim holly bushes on his property growing close to intersection); *Williams v. Davis*, 974 So. 2d 1052, 1062 (Fla. 2007) (landowner had no duty to motorists with regard to natural conditions contained wholly within the private property's boundaries); *Pyne v. Witmer*, 159 Ill. App. 3d 254, 261-62, 512 N.E.2d 993 (1987) (landowner has no duty to remove foliage on his property so that motorists approaching an intersection could see other motorists); *Fritz v. Parkison*, 397 N.W.2d 714, 715-17 (Iowa 1986) (owner of land abutting curved highway owed motorists no duty to remove trees located on owner's property); *Hackett v. Costa*, 12 Mass. L. Rptr. 420, at *5 (Mass. Super. Ct. 2000) (landowner has no common-law duty to users of a highway to remove vegetation to

improve visibility for drivers approaching intersections); *Lubitz v. Village of Scarsdale*, 31 A.D.3d 618, 620, 819 N.Y.S.2d 92 (2006) (homeowner has no common-law duty to prevent vegetation growing on his or her property from creating a visual obstruction to users of a public roadway); *RGR, LLC v. Settle*, 288 Va. 260, 277, 764 S.E.2d 8 (2014) (landowner has no common-law duty to drivers regarding natural conditions on the land); but see *Hamric v. Kansas City Southern Ry. Co.*, 718 S.W.2d 916, 918 (Tex. App. 1986) (owner of premises abutting highway has a duty to exercise reasonable care not to jeopardize safety of motorists at intersections by failing to cut tall, thick grass and weeds); accord *Harvey v. Hansen*, 299 Pa. Super. 474, 487-88, 445 A.2d 1228 (1982) (suit may proceed against owner of land for failure to remove plant growth causing poor visibility at intersection); Jones, *Trains, Trucks, Trees and Shrubs: Vision-Blocking Natural Vegetation and a Landowner's Duty to Those off the Premises*, 39 Vill. L. Rev. 1263 (1994) (recommending that a duty be recognized on both rural and urban landowners).

We mentioned already that we found the Second Restatement rule consistent with Kansas caselaw. As we also noted, under both the Second Restatement and caselaw generally, landowners usually don't owe a duty to drivers to cut down *naturally occurring* vegetation that obstructs the view at an intersection. Kansas caselaw hasn't specifically discussed those rules, but we have had cases involving a corollary proposition. A different rule generally applies for *artificial conditions* on the land—in that event, landowners *do* owe a duty of reasonable care toward drivers. Restatement (Second) of Torts § 364 (1965). Kansas courts haven't noted this natural/artificial distinction in the context of obstructions of the view of drivers, but they have recognized it in other contexts. See, *e.g.*, *Glaser v. U.S.D. No. 253*, 271 Kan. 178, 186-87, 21 P.3d 573 (2001) (citing Restatement [Second] of Torts § 364 on artificial conditions); *Carter v. Skelly Oil Co.*, 191 Kan. 474, 479-80, 382 P.2d 277 (1963) (noting distinction between natural and artificial conditions).

Generally, trees and other naturally occurring vegetation, weeds, and shrubbery are considered natural conditions, along with swamps, falling rocks, and the natural flow of surface water.

Prosser and Keeton, Law of Torts § 57; Restatement (Second) of Torts § 363, comment b (1965) (natural condition of land means "trees or plants planted or preserved" or "the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them"). Artificial conditions include human activity: damming a stream, weakening rocks during highway construction, building or demolishing, and planting a row of trees next to a highway. Prosser and Keeton, Law of Torts § 57; see, *e.g.*, *Kolba v. Kusznier*, 252 N.J. Super. 53, 60, 599 A.2d 194 (1991) (shrubbery planted by landowners is an artificial condition). So the only way the trees in this case could be considered an artificial condition is if the Hallbauers intentionally planted them or did anything to maintain them, and there's no suggestion that they did either: The Hallbauers testified that the trees had been on the property when they bought it in 2006 and that they had been cutting them down over time. The investigating officer noted that there were trees on the interior of the property as well as along the property line, and photos of the property at the time of the accident show trees that look like they were naturally occurring—they are all different sizes and heights and appear unmaintained. Thus, the Hallbauers aren't liable for Manley's death under the traditional common-law rule, which doesn't impose a duty on landowners to trim naturally occurring trees and vegetation—a result supported by Kansas Supreme Court caselaw that has noted the distinction between artificial and natural conditions on one's land.

In sum, although there is a potential argument for the plaintiff based on the Third Restatement, we have concluded that the Second Restatement's position that there is no duty on a rural landowner in this situation is the most consistent with Kansas law. Our foreseeability analysis, the holdings of *Goodaile* and *Bohm*, the rulings from other states, and the traditional common-law rule all suggest that the Hallbauers did not owe a duty to Manley to trim the naturally occurring trees and vegetation on their land that obstructed visibility at the intersection. The Manleys suggest that this ruling somehow grants landowners blanket immunity that would protect them from liability for using dynamite to remove tree stumps, for example. But the Manleys' hypothetical is off the

mark—very different legal standards govern abnormally danger-ous activities like using dynamite. See, *e.g.*, *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 474, 284 P.3d 1049 (2012) (imposing strict liability for abnormally dangerous activi-ties); Restatement (Second) of Torts §§ 519-20 (1965) (same). Our holding is more limited: Under the common law and Kansas prec-edent, a rural landowner is not required to cut down the trees on his or her property to maintain or improve visibility at an adjacent intersection.

We therefore affirm the district court's judgment.