IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,531

LORI LEANN MANLEY, Individually and as Special Administrator for the
ESTATE OF DARREN R. MANLEY, Deceased,
AMANDA TUBBS, and DERRICK MANLEY,
*Appellants*,

v.

STEVEN B. HALLBAUER and KATHIE M. HALLBAUER,
*Appellees*.

SYLLABUS BY THE COURT

A landowner whose property abuts a rural intersection owes no duty to passing drivers to trim or remove trees or other vegetation on the property.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 297, 387 P.3d 185 (2016). Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed August 10, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Angela L. Spigarelli*, of The Spigarelli Law Firm, of Pittsburg, argued the cause, and *Fred Spigarelli*, of the same firm, was on the briefs for appellants.

*Vince P. Wheeler*, of Hite, Fanning & Honeyman L.L.P., of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: After a deadly two-car accident at a rural intersection, the estate and heirs of a deceased driver sued the owners of property located at one corner of the

1

intersection. The estate alleged an overgrowth of trees and vegetation obstructed the view at the intersection and contributed to the accident. The estate's ability to recover depends on whether the landowners owed a common-law duty to passing drivers to correct a natural condition on their property that affected road visibility at the rural intersection. We hold the landowners owed no common-law duty to the drivers under those circumstances.

FACTS AND PROCEDURAL BACKGROUND

Darren Manley died after his truck collided with John Patton's truck at the intersection of two gravel roads: Anderson Road and 20000 Road in Labette County. The intersection of the two roads had no traffic signs.

Officers investigating the accident found no evidence suggesting that either driver tried to brake or to avoid the collision. The officers testified trees located on land abutting the southeast corner created a blind spot. One of the investigating officers testified the trees made it impossible for northbound traffic to see approaching westbound traffic and for westbound traffic to see approaching northbound traffic. Patton testified he did not have a clear view of Anderson Road south of the intersection because of the tree row and underbrush and did not see Manley before entering the intersection. In the opinion of Manley's engineering expert, "The lack of proper signage and site distance caused the accident which resulted in the death of Darren Manley."

About five years before the accident, Steven and Kathie Hallbauer purchased the property abutting the southeast corner of the intersection—the property with the trees that created the blind spot. The tree growth remained largely unchanged from the time the Hallbauers purchased the property until the accident, although the Hallbauers had cleared some trees. Steven testified that the view of the intersection was obstructed from around

2

50 to 60 feet away when traveling north or west. Kathie agreed with Steven's testimony. Both Hallbauers agreed that the intersection would be safer with a stop sign.

Manley's estate and heirs (Manley) filed a wrongful death lawsuit against Labette County, Patton, and the Hallbauers. Manley settled with Patton and Labette County. The Hallbauers moved for summary judgment, arguing they could not be held liable under Kansas law for the failure to remove trees or other vegetation. The district court granted summary judgment and certified the judgment as final under K.S.A. 2017 Supp. 60-254(b).

A Court of Appeals panel affirmed the district court's grant of summary judgment. The panel focused on the existence of a common-law duty, which it tied to whether "a reasonable landowner [would] have foreseen a probability of harm to motorists from the obstructed view?" *Manley v. Hallbauer*, 53 Kan. App. 2d 297, 299-302, 387 P.3d 185 (2016). The panel considered two Kansas Supreme Court cases the Hallbauers relied on but ultimately held they did not control. 53 Kan. App. 2d at 303. Finding no binding Kansas authority on whether the landowners owed a duty to passing drivers, the panel turned to the American Law Institute's Restatements of Torts, which restate the law in a manner useful to courts, lawyers, scholars, and others. But these Restatements are not state-specific and do not necessarily reflect the law of Kansas.

The panel noted the answer to the question of a landowner's duties to passing motorists differed depending on whether it consulted the Restatement (Second) or the Restatement (Third) of Torts. Under the Restatement (Second), a rural landowner generally is not liable to someone who, while off the property, is injured by a natural condition of the land, like trees. But under the Restatement (Third), a landowner could be held liable if the landowner knew of the risk or the risk was obvious. The panel adopted the Restatement (Second) view, noting the Restatement (Second) had been applied by the

3

Kansas Supreme Court many times and the Restatement (Third) differs from Kansas law in its analytical approach to negligence. The caselaw of other jurisdictions also persuaded the panel; these cases found no duty under similar circumstances. 53 Kan. App. 2d at 304-06. The panel summarized its conclusion:

> "[A]lthough there is a potential argument for the plaintiff based on the Third Restatement, we have concluded that the Second Restatement's position that there is no duty on a rural landowner in this situation is the most consistent with Kansas law. Our foreseeability analysis, the holdings of [the two Kansas Supreme Court cases cited by the Hallbauers], the rulings from other states, and the traditional common-law rule all suggest that the Hallbauers did not owe a duty to Manley to trim the naturally occurring trees and vegetation on their land that obstructed visibility at the intersection." 53 Kan. App. 2d at 307.

We granted Manley's petition for review.

## ANALYSIS

This case arises from the district court's grant of summary judgment. We apply our well-established standard of review:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

4

must be denied.' *Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014)." *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

Generally, granting summary judgment in negligence cases must be done with caution. But "[a]n exception . . . applies when the only question presented is one of law." *Apodaca v. Willmore*, 306 Kan. 103, 106, 392 P.3d 529 (2017). And, here, the issue— whether Kansas law imposes a duty on a land possessor or property owner for natural conditions growing on the land that impede visibility of passing traffic at a rural intersection—is a question of law. See *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 920, 257 P.3d 287 (2011). Questions of law are subject to de novo review. *Apodaca*, 306 Kan. at 106.

A plaintiff asserting a negligence claim must prove: "(1) a duty owed to the plaintiff, (2) breach of that duty, (3) causation between the breach of duty and the injury to plaintiff, and (4) damages suffered by the plaintiff." *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 622, 413 P.3d 432 (2018). We are concerned here with the first element, the duty owed to a plaintiff. And, as the Court of Appeals panel correctly noted: "Where a duty exists, a person generally has the duty to act as a reasonably prudent person would act in similar circumstances. See *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 272, 130 P.3d 555 (2006); *Wozniak v. Lipoff*, 242 Kan. 583, 607, 750 P.2d 971 (1988)." *Manley*, 53 Kan. App. 2d at 300.

Kansas law limits the person or persons to whom a duty extends, however. "To find a legal duty to support a negligence claim, (1) the plaintiff must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable." *Berry v. National Medical Services, Inc.*, 292 Kan. 917, Syl. ¶ 1, 257 P.3d 287 (2011). But foreseeability does not end the analysis: "This court may choose not to recognize a duty if the duty is contrary to

public policy." *Berry*, 292 Kan. at 922. As a corollary to that principle, we recognize a new duty only when the duty is consistent with public policy.

Under the traditional rule applying to the circumstances of this case, "the owner of land is under no affirmative duty to remedy conditions of purely natural origin upon his land[;] . . . the duty is upon the motoring public to observe obstructions to view and to exercise reasonable care for their own safety and protection." Annot. 69 A.L.R.4th 1092, § 3; see also § 2[a]. The Restatement (Second) of Torts § 363(1) (1965) also recognizes the traditional rule: "[N]either a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land." See Restatement (Second) of Torts § 363 (1965), comment b ("'Natural condition of the land' is . . . used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them."). But § 363(2) recognizes an exception that imposes liability on a possessor of land in urban areas "for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." The Restatement's comment explained the reason for the exception:

> "It requires no more than reasonable care on the part of the possessor of the land to prevent an unreasonable risk of harm to those in the highway, arising from the condition of the trees. In an urban area, where traffic is relatively frequent, land is less heavily wooded, and acreage is small, reasonable care for the protection of travelers on the highway may require the possessor to inspect all trees which may be in such dangerous condition as to endanger travelers. It will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree." Restatement (Second) of Torts § 363, comment e (1965).

The Restatement (Second) expresses no opinion whether this exception could apply in rural areas.

6

Our court first addressed the issue in two 1920s cases—*Goodaile v. Cowley County*, 111 Kan. 542, 207 P. 785 (1922), and *Bohm v. Racette*, 118 Kan. 670, 236 P. 811 (1925). In both cases, plaintiffs argued tort liability should be imposed based on Kansas statutes. And in both cases, we followed the traditional rule and declined to impose civil tort liability on the landowners. Each case used slightly different language in reaching its conclusions.

*Goodaile* framed the issue as liability in the syllabus:

> "The owners of land permitted high hedges to grow along public roads which crossed at the corner of their property; the hedges obstructed the view of one road from the other; a woman driving a horse and buggy along the road approached the crossing; the horse became frightened at an automobile which suddenly appeared at the crossing of the roads; the woman was thrown out and injured. *Held*, that the owners of the land are not liable in damages for the injuries sustained by her." 111 Kan. 542, Syl.

The woman asked the *Goodaile* court to find a duty on the part of the landowners because of three statutes—one that required landowners to keep hedge fences along the highway trimmed down, one that authorized county commissions to cut hedge fences at intersections, and another that allowed the commission to require the landowner to do the cutting or pay a fine.

The *Goodaile* court determined these provisions imposed a statutory duty to cut the hedges. But the statutes did not "declare the hedges nuisances nor say that the defendants shall be liable in damages for their failure to trim the hedges." 111 Kan. at 544. The court noted that the statutes applied only to hedges. And, significant to our analysis, the court reasoned: "Buildings, woodland, or tall crops would have obstructed the vision from one road to the other the same as the hedges, but it cannot be contended

7

that such obstructions would render the owners of the land liable for accidents occurring at the crossing of the highways." 111 Kan. at 544.

The *Goodaile* court found no basis, even given the Kansas statutes, to distinguish between the duty that would apply simply because a hedge caused the obstruction—as opposed to a building, woodlands, or tall crops—and recognized that the landowner would not be liable. In fact, if a condition other than a hedge had caused the obstruction, "it cannot be contended" the landowners would be "liable." While the court used the word "liable" rather than the term "duty," the context of the discussion related to the woman's contention that the landowners owed her a duty. 111 Kan. at 544. In this context, the court's holding conveyed that no duty arose.

After discussing duty, the *Goodaile* court turned its analysis to causation—a different element the woman had to establish. The court acknowledged the possibility that the hedges contributed to the accident, but concluded they were not the proximate cause. Instead, "[t]he horse was frightened by an automobile. That was what caused the accident." 111 Kan. at 545. The court affirmed the district court's dismissal of the case because the woman's "petition did not state a cause of action against the owners of the land." 111 Kan. at 545.

This court again confronted the possibility of a landowner's liability for hedges growing on land adjoining the highway in *Bohm*, 118 Kan. at 670-71. There again hedges were higher than the statutorily allowed height. But the *Bohm* court added little to *Goodaile*'s analysis. It simply rejected Bohm's attempt to distinguish *Goodaile* factually, concluding, "That action was based on negligence of the owner for not trimming the hedge as required by law, and the principle there declared controls here." 118 Kan. at 671.

We read these two 1920s cases as adopting the traditional view that a landowner owes no affirmative duty to passing motorists to remedy conditions of purely natural origin. These cases also reject the argument that Kansas statutes support departing from the traditional view based on the statutes imposing a duty to trim overgrowth and allowing for fines when landowners fail to comply after being given notice by authorities. These early cases established that Kansas public policy does not support imposing tort liability on landowners to correct natural conditions occurring entirely on their property that infringe on visibility of an intersection of public highways.

Our approach deviates from the Court of Appeals panel's analysis of these cases. The panel discounted the similarities between this case and *Goodaile* and *Bohm* because the earlier cases involved allegations of a statutorily imposed duty. *Manley*, 53 Kan. App. 2d at 302-03. Though true, this does not necessarily render the cases irrelevant. In fact, the *Goodaile* court recognized the general rule when it stated that "it cannot be contended" an obstruction caused by woodland or crops would cause the abutting landowners to be liable. *Goodaile*, 111 Kan. at 544. And even with statutory requirements to trim hedges, both courts refused to deviate from the traditional rule. Thus, we disagree with the panel's conclusion that these cases' reliance on the statutes makes them "not all that similar to our case." *Manley,* 53 Kan. App. 2d at 302.

The panel was also reluctant to rely on these cases because they were not explicitly about duty. The panel found the cases unclear because they "did not focus on whether the lack of liability was based on a finding of no duty or no proximate cause." 53 Kan. App. 2d at 303. We disagree with this characterization of *Goodaile*, which contains two separate and distinct analyses—one addressing liability (sometimes referred to by the court as "duty") and another addressing proximate cause. In addressing liability separately from causation, the court provided alternative rationales, each sufficient to support the court's conclusion not to impose liability on the landowner. Admittedly,

9

*Bohm* does speak broadly of negligence rather than duty: "That action was based on negligence of the owner for not trimming the hedge as required by law, and the principle there declared controls here." 118 Kan. at 671. But that should not necessarily be read as a broad conclusion addressed to all elements of negligence. As this court has explained,

> "the word 'negligence,' standing alone, refers to only two of the four elements required in a civil action for damages caused by negligence. Those two elements are: (1) the existence of a duty and (2) an act or omission in breach of that duty. Kansas decisions also use 'negligence' or 'negligent act' to mean duty and breach." *Fieser*, 281 Kan. at 272.

Thus, negligence as used in *Bohm* should be understood to include duty and breach, but not causation.

Having concluded Kansas law reflects a public policy not to impose tort liability on the landowner, we now consider whether this court should adopt the approach from the Restatement (Third) of Torts. Manley argues we should and challenges the reasons the Court of Appeals panel chose to continue applying the traditional rule.

As we have detailed, the traditional approach would not impose an affirmative duty on a rural landowner to clear a natural condition of the land. See Restatement (Second) of Torts § 363 (1965); see also Annot. 69 A.L.R.4th 1092, §§ 2[a], 3; Prosser & Keeton, The Law of Torts § 57 (5th ed. 1984). In contrast, the approach suggested by the Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 54 (2012) opens the door to imposing liability here:

> "(b) For natural conditions on land that pose a risk of physical harm to persons or property not on the land, the possessor of the land . . . has a duty of reasonable care only if the possessor knows of the risk or if the risk is obvious."

10

Comment c to that section acknowledges the Restatement (Second) discussion of natural conditions, noting the urban-rural distinction has been influential. And comment e specifically addresses situations involving intersections:

> "*Adjacent highways*. This Section applies to those on highways adjacent to private property. Section 368 of the Second Restatement addressed the liability of a land possessor for harm to those on adjacent highways. As the Second Restatement recognized, there is nothing unique about a highway, as opposed to other types of adjacent public or private land, that should affect the duty of a land possessor. The existence of a highway may affect the magnitude of the foreseeable risk of certain conduct by the land possessor, but that would ordinarily go to whether there is a breach of the duty, not to the existence of a duty. This Section also replaces § 368."

The panel declined to adopt the Restatement (Third) for a few reasons. See *Manley*, 53 Kan. App. 2d at 304-05. First, this court has repeatedly applied the Restatement (Second). See *Manley*, 53 Kan. App. 2d at 304 (collecting cases). And second, the Restatement (Third) departs from the formulation of duty used by Kansas courts by moving away from foreseeability as part of the duty analysis. 53 Kan. App. 2d at 304-05; see Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7, comment j (2010); Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 54, comment a (2012).

The Restatement (Third) makes a case for omitting foreseeability of risk from the duty analysis. In particular, it criticizes the use of foreseeability in a duty analysis as invading the function of the jury as fact-finder. Restatement (Third) of Torts: Liability for Physical & Emotions Harm § 7, comment j (2010). The Restatement (Third) therefore advocates that courts should limit "no-duty rulings to articulated policy or principle in order to facilitate more transparent explanations of the reasons for a no-duty ruling." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7, comment j

11

(2010). We take the policy and principle approach in this case. And we leave for another day the decision whether to adopt other aspects of the Restatement (Third), in particular whether we should abandon foreseeability as a consideration when analyzing a person's duty to another. See Zipursky, *Foreseeability in Breach, Duty, and Proximate Cause*, 44 Wake Forest L. Rev. 1247, 1257-66 (2009) (questioning whether omission of foreseeability restates law or advocates change in law of most jurisdictions); see also Cardi, *Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L. Rev. 739 (2005). We agree with the panel that doing so would deviate from our caselaw.

As our primary policy consideration, this court adheres to precedent "'unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990]). Manley does not persuade us to abandon the traditional rule that a landowner owes no duty in the circumstances of this case. We conclude the determination of the existence of a duty is better resolved by following our precedent that embraces the traditional rule, especially because of the public policy that underlies that rule. See Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7, comment j (2010).

We thus decline to follow the Restatement (Third) view for different reasons than the panel. In part this is because our reading of *Goodaile* differs and, in part, because the panel's foreseeability analysis shows the perils the Restatement (Third) and scholars caution against namely, blending the elements of duty and breach as well as usurping the trier-of-fact's function. See Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7, comment j (2010); see also Cardi, 58 Vand. L. Rev. at 755 ("[I]n some cases, foreseeability seems so closely tied to the concept of duty that a ruling on

12

foreseeability proves determinative of the duty element."). And, in this way, the panel raises the broader question of whether we will shift all of Kansas law about how courts determine a common-law duty. We need not to answer that question here because of the independent policy reasons that underlie the traditional rule recognized in *Goodaile*, 111 Kan. at 544.

In discussing foreseeability, the panel noted other factors it found affect the foreseeability analysis. But these factors are equally persuasive, and perhaps even more so, when considering whether public policy favors imposing liability on the landowners here. These factors provide additional policy reasons for our decision. Specifically, the panel emphasized the drivers' responsibility to drive with caution when conditions result in obstructed visibility. *Manley*, 53 Kan. App. 2d at 301 (citing *Toumberlin v. Haas*, 236 Kan. 138, 144, 689 P.2d 808 [1984]). It also found informative the traditional rule in premises liability that landowners have no duty to protect against open and obvious dangers. Instead, individuals have a responsibility to protect themselves from such conditions. 53 Kan. App. 2d at 301. These rules provide strong support for limiting liability under the circumstances of this case because the active participants in the accident can take steps to avoid a collision given that drivers should drive with caution to protect themselves and others at intersections, especially those with decreased visibility.

Additional factors weigh toward a determination that sound public policy would not impose this duty in Kansas. In our state, tall crops and natural conditions often obstruct a driver's view at a rural intersection. See *Goodaile*, 111 Kan. at 544 (noting rule for crops, woodlands, and hedges). And rural landowners often have many miles of property to maintain. Some of these considerations underlie the distinction between rural and urban landscapes recognized in both the Restatement (Second) and (Third) as influencing court decisions. See Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 54, comment c (2012); Restatement (Second) of Torts § 363(2)

13

(1965). And many decisions of our sister states support maintaining the traditional approach. See *Manley*, 53 Kan. App. 2d at 305-06 (collecting cases). See generally Annot. 69 A.L.R.4th 1092.

Kansas statutes confirm our view that Kansas public policy imposes no duty on landowners here. Our Legislature has conferred responsibility for care and maintenance of our roads "'for the safe passage of persons and property'" on various government entities. See *Patterson*, 307 Kan. at 626-27 (quoting *Finkbiner v. Clay County*, 238 Kan. 856, 861, 714 P.2d 1380 [1986]). Kansas law recognizes landowners have some duty to maintain their property so that trees, plants, shrubs, or other obstructions create no traffic hazard by obstructing the view of passing drivers. K.S.A. 8-2011(a). But the responsibility for determining whether a traffic hazard exists falls to the secretary of transportation or a local authority. K.S.A. 8-2011(b). And the statute imposes a penalty only if a landowner fails to respond to one of those authorities' notice. K.S.A. 8-2011(c). Had the Legislature wished to effect a different public policy than that articulated by this court and impose additional civil tort liability on the landowner, it has had more than 90 years in which to do so.

Our sister courts have found different rules could apply in different circumstances. For example, a different rule may be appropriate for urban areas. See Restatement (Second) of Torts § 363(2) (1965) & Rptrs. Note (collecting cases). Or a different rule may be appropriate when natural growth on the property extends outside the bounds of the property. E.g., *Williams v. Davis*, 974 So. 2d 1052, 1054 (Fla. 2007). But we are not faced with those situations today. Here, the accident occurred in a location that is undisputedly rural. There is no indication any part of the trees or overgrowth extend outside the property bounds.

14

We conclude the traditional rule embraced in *Goodaile* finds support in public policy. We, thus, hold a landowner whose property abuts a rural intersection owes no duty to passing drivers to trim or remove trees or other vegetation on the property.

In summary, although we depart from the reasoning of the Court of Appeals panel, we conclude it and the district court reached the correct result by concluding the Hallbauers owed Manley no duty of care under Kansas law.

Judgment of the district court is affirmed. Judgment of the Court of Appeals is affirmed.

STEGALL, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 115,531 vice Justice Stegall under the authority vested in the Supreme Court by K.S.A. 20-2616.