IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,859

MARILEE DROUHARD-NORDHUS, as special administrator of
THE ESTATE OF DONALD M. DROUHARD, Deceased,
and on Behalf of the Heirs-at-law of
DONALD M. DROUHARD,
*Appellant*,

v.

NEIL ROSENQUIST, M.D., *Appellee*,
and
R. LARRY BEAMER, M.D., *Defendant.*

SYLLABUS BY THE COURT

1.

To prevail on a medical malpractice claim, a plaintiff must establish: (a) The health care provider owed the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (b) the health care provider breached this duty or deviated from the applicable standard of care; (c) the patient was injured; and (d) the injury proximately resulted from the health care provider's breach of the standard of care.

2.

Proximate cause is that cause which in natural and continuous sequence, unbroken from an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.

1

3.

Proximate cause incorporates concepts falling into two categories: causation in fact and legal causation. To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between the defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 18, 2013. Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed March 27, 2015. Judgment of the Court of Appeals affirming the district court on the issue subject to our grant of review is affirmed. Judgment of the district court on that issue is affirmed.

*Gerard C. Scott*, of Scott Law, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Shannon L. Holmberg*, of Gilliland & Hayes, LLC, of Hutchinson, argued the cause, and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: This is a medical malpractice case in which we consider whether plaintiff put forth sufficient evidence of causation to survive summary judgment. The district court granted Dr. Neil Rosenquist's summary judgment motion, holding there was insufficient evidence of a cause-and-effect relationship between the radiologist's alleged negligent diagnosis and the patient's death. The Court of Appeals affirmed the district court's granting of summary judgment on Rosenquist's motion. *Drouhard-Nordhus v.*

2

*Rosenquist*, No. 108,859, 2013 WL 5737363 (Kan. App. 2013) (unpublished opinion). We affirm because the plaintiff failed to marshal evidence of causation sufficient to defeat the summary judgment motion.

FACTUAL AND PROCEDURAL BACKGROUND

The parties agree to the following facts as alleged in Rosenquist's statement of uncontroverted facts from his summary judgment motion. Plaintiff did not allege additional uncontroverted facts pertinent to this appeal.

On August 23, 2007, Donald Drouhard went to the Harper Hospital District No. 5 Emergency Department complaining of abdominal pain and a history of nausea and dry heaving. CT scans of Drouhard's abdomen, pelvis, and chest were performed and sent to the defendant radiologist, Dr. Neil Rosenquist, who gave a verbal report to Stan Wedman, a physician assistant. Rosenquist later dictated a written report, but it never reached the subsequent treating physicians.

Wedman's notes from Rosenquist's verbal report indicate the radiologist suspected an obstructive process of the gallbladder. Based on that verbal report, Wedman contacted Dr. Larry Beamer, a surgeon, at Via Christi Regional Medical Center for a surgical consult. Drouhard was transferred to Via Christi, and the CT scans were sent with him.

During a discovery deposition, Beamer testified that the only thing he was told about Rosenquist's interpretation of the CT scans was that Drouhard had an enlarged gallbladder, funny-shaped liver, and an absent spleen. Once at Via Christi, Drouhard was seen by Beamer's resident, Dr. Stanley Jones, who testified during a deposition that he took Drouhard's CT scans to Via Christi's radiology department, where an unidentified radiologist told Jones the CT scans appeared normal. According to Jones, that radiologist

3

read the scan to show mild distention of the gallbladder, no stones, a congenital abnormally shaped liver, and no evidence of small bowel obstruction.

Beamer further testified that he reviewed the CT scans personally and with another unidentified Via Christi radiologist. Beamer's impression from the CT scans was "dilated gallbladder without evidence for acute inflammatory change. Abnormal shape of liver— etiology unknown. Surgical absence of spleen."

Drouhard died while at Via Christi the day after he went to the Harper Hospital Emergency Department. The coroner's report diagnosed an intrahepatic hematoma with adjacent hepatic tissue damage. The cause of death was an acute intra-abdominal bleed with associated hemodynamic and cardiac instability.

Drouhard's widow sued Rosenquist, Beamer, Via Christi, and several other doctors for medical malpractice. After the widow's death, Marilee Drouhard-Nordhus, a daughter, was substituted as the named plaintiff. Only the claims against Rosenquist are of concern in this appeal.

Following discovery, the district court conducted a pretrial conference during which plaintiff specified the negligence allegations against Rosenquist as failing to: (1) describe the abnormal density of the gallbladder; (2) report a potential diagnosis of a gallbladder containing a large hematoma; and (3) report possible free extravasation of contrast. Rosenquist moved for summary judgment, arguing plaintiff failed to establish causation in fact based on two missing links in the causal chain: (1) the treating physicians at Via Christi never relied on Rosenquist's allegedly negligent evaluation of the CT scans; and (2) but for the allegedly incorrect diagnosis by the radiologist, the patient's death would not have occurred.

4

Plaintiff did not controvert Jones' or Beamer's testimony that they took the CT scans to Via Christi radiologists for independent review. Instead, plaintiff argued only that the physicians' veracity on this was in question because both failed to record or recollect the identity of those radiologists. In his reply, Rosenquist noted plaintiff did not recite any evidence actually controverting the facts testified to by the doctors. See Supreme Court Rule 141 (2014 Kan. Ct. R. Annot. 257).

During a hearing on summary judgment, plaintiff argued the testimony of plaintiff's expert radiologist, Dr. Seth N. Glick, sufficiently established causation regarding the patient's death, citing the concluding paragraph in Glick's expert report, which states:

> "It is my opinion within a reasonable degree of medical certainty that Dr. Rosenquist deviated from the standard of care by failing to describe the abnormal density of the gallbladder and failing to report a potential diagnosis of a gallbladder containing a large hematoma. *More likely than not*, *this would have resulted in a stat ultrasound and/or [hepatobiliary iminodiacetic acid (HIDA)] scan when Mr. Drouhard was in stable condition and appropriate and life-saving intervention should then have been administered.*" (Emphasis added.)

Plaintiff also relied on an excerpt from Glick's deposition testimony when Rosenquist's counsel asked Glick for the "basis for [his] opinion that Dr. Rosenquist providing any different or additional information would have prompted an earlier ultrasound or HIDA scan." Glick responded:

> "Well, again, a lot of what I can discuss is really based on what I think the—what I know that the CT scan showed. And I think it's very possible—more likely an ultrasound than a HIDA scan would have been the appropriate follow-up for what I saw on the CT scan. But based on what I saw on the CT scan, I mean, *I would think it would be very*

5

*reasonable to do emergency surgery and not even do any further testing to be honest*." (Emphasis added.)

The district court adopted the facts in Rosenquist's motion as uncontroverted and granted him summary judgment, finding causation lacking. First, it held "there is no evidence to support a conclusion from any expert *that this alleged deviation from the standard of care in any way caused or contributed to the death of [Drouhard]*." (Emphasis added.) Second, it held plaintiff failed to prove causation in fact because Rosenquist's read of the CT scan was not relied on or used by Beamer while treating Drouhard.

On appeal to the Court of Appeals, plaintiff argued the district court failed to view the evidence in the light most favorable to her when granting summary judgment. Plaintiff argued Glick established sufficient evidence of causation to survive summary judgment. The Court of Appeals, like the district court, held plaintiff failed to establish a causal connection between any negligence by Rosenquist and Drouhard's death. *Drouhard-Nordhus*, 2013 WL 5737363, at *5-6.

The panel held Glick's expert report failed to "reveal any explicit link between Dr. Rosenquist's alleged breach of duty and [Drouhard's] death" and noted Glick admitted as much by testifying he did not intend to testify regarding any causal link. 2013 WL 5737363, at *5. The panel further held plaintiff's admissions that none of the Via Christi physicians received Rosenquist's written report or relied on his verbal report also demonstrated causation was lacking. 2013 WL 5737363, at *6.

Plaintiff petitioned for this court's review of the panel's decision affirming summary judgment of her claim against Rosenquist. Jurisdiction is proper under K.S.A.

6

20-3018(b). See also K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review).

ANALYSIS

The only question presented is whether the district court erred by granting summary judgment on the medical malpractice claim against Rosenquist.

*Standard of Review*

The standard for reviewing summary judgment is well-established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014).

If the moving party shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party "'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.'" *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 556, 205 P.3d 1245 (2009) (quoting *Hurlbut v. Conoco*, 253 Kan. 515, 520, 856 P.3d 1313 [1993]).

7

*Discussion*

To prevail on a medical malpractice claim, a plaintiff must establish: (1) The health care provider owed the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (2) the provider breached this duty or deviated from the applicable standard of care; (3) the patient was injured; and (4) the injury proximately resulted from the breach of the standard of care. *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010). The only issue in this appeal concerns the proximate cause element, which we have defined as a cause that "in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." 290 Kan. at 420.

There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable. 290 Kan. at 420.

The district court and the Court of Appeals held there was insufficient evidence of causation based on plaintiff's failure to put forth evidence on summary judgment that Rosenquist's alleged deviation from the standard of care caused Drouhard's death. They also noted the treating physicians at Via Christi did not rely on Rosenquist's evaluation of the CT scans. *Drouhard-Nordhus*, 2013 WL 5737363, at *5-6. Both of these points

8

concern causation in fact, *i.e.*, but for Rosenquist's alleged negligence, Drouhard would not have died. We consider first plaintiff's argument that Glick's opinion establishes the requisite causation in fact.

*Claim that Rosenquist's evaluation caused the patient's death*

Plaintiff relies on Glick's deposition testimony that

"more likely an ultrasound than a HIDA scan would have been the appropriate follow-up for what I saw on the CT scan. But based on what I saw on the CT scan, I mean, *I would think it would be very reasonable to do emergency surgery and not even do any further testing to be honest*." (Emphasis added.)

She further refers us to Glick's conclusion in his written report that a correct diagnosis "would have resulted in a stat ultrasound and/or HIDA scan when Mr. Drouhard was in stable condition *and appropriate and life-saving intervention should then have been administered*." (Emphasis added.)

Glick's testimony may be sufficient to establish that a different evaluation would have resulted in a different diagnostic test, *i.e.*, an ultrasound or earlier HIDA scan. But to establish the final link in the causation chain, plaintiff must show those tests would have resulted in a treatment that would have prevented Drouhard's death. The references to "life-saving intervention" and "emergency surgery" are speculative without some additional facts or details regarding those treatments and their potential outcomes. And Glick's written report does not supply those additional facts or details.

9

During his deposition, Glick characterized his opinion, stating:

"I must say my focus on this case is what the CT scan showed and what the report showed. That's it. *I'm not going to speak about outcomes or causation. I'm testifying strictly on what the standard of care required for the radiologist to say about that specific CT scan.*" (Emphasis added.)

And when defense counsel sought clarification, asking whether Glick was prepared to give causation opinions, Glick responded:

"Well, I can give causation opinions only as to what I believe the CT scan showed with a high degree of medical certainty, and assuming that had—and I can say that—*based on what I saw on the outcome, that my opinion, more likely than not, is that what was shown on that CT scan basically was responsible for the outcome.*

"*But I am not a pathologist and I'm not a clinician, but I can put two and two together and say what I think is going on in the CT scan and what I saw from the autopsy report are directly related. As a physician I can say this, but I'm not a surgeon and I'm not a pathologist.*" (Emphasis added.)

After reviewing Glick's report and his testimony, the Court of Appeals held that plaintiff failed to establish causation in fact through expert evidence. See *Drouhard-Nordhus*, 2013 WL 5737363, at *5 ("Said differently, a review of Dr. Glick's expert report does not reveal any explicit link . . . . "). The panel then used Glick's deposition testimony cited above to bolster that conclusion. See *Drouhard-Nordhus*, 2013 WL 5737363, at *5-6 ("To the contrary, Dr. Glick admitted in his deposition that he did not intend to testify about a causal link.").

But the panel did not, as plaintiff now claims on review, reject Glick's opinions because he refused to consider himself to be qualified to offer expert testimony on

causation. That very well may have been error if that was what the panel actually had done. See *George v. Pauly*, 30 Kan. App. 2d 444, 453, 45 P.3d 1 (2001) (doctor is not qualified by training and experience to characterize the nature or proper use of his medical opinions in a court of law). Plaintiff mischaracterizes the panel's holding in this regard.

Plaintiff needed expert medical opinion testimony to show there was a treatment approach that would have prevented Drouhard's death and tie the failure to pursue that approach to Rosenquist's allegedly negligent CT scan evaluation. Glick's generalized references to an "appropriate and life-saving intervention" or that the "CT scan basically was responsible for the outcome" were inadequate to meet plaintiff's causation burden. Glick does not identify the life-saving interventions, and, more importantly, he does not explain how those interventions would have been effective in saving the patient's life. Similarly, attributing what was shown on the CT scans as being responsible for the patient's death does nothing more than identify the probable cause of death. It does not establish that, but for the alleged negligence by Rosenquist, the patient would be alive.

*Reliance on Rosenquist's CT scan evaluation*

We also agree with the panel that plaintiff failed to show the treating physicians relied on Rosenquist's read of the CT scans. See *Drouhard-Nordus*, 2013 WL 5737363, at \*6. We note plaintiff did not controvert the following facts:  (1) Rosenquist's written reports were not available to the Via Christi physicians at any time; (2) Glick agreed the Via Christi physicians did not rely on what Rosenquist reported, or even what Wedman, the physician assistant, had reported, but rather reviewed the CT scans independently and with other radiologists; (3) Glick conceded he did not know whether the health care providers at Via Christi ever saw Rosenquist's written report; and (4) Glick admitted

11

there was nothing in the records that led him to believe the health care providers at Via Christi relied "in any way, shape or form" on the verbal report given by Rosenquist.

Plaintiff seems to argue these uncontroverted facts are irrelevant because plaintiff is not required to demonstrate the subsequent treating physicians relied on Rosenquist's evaluation of the CT scans. Plaintiff cites *Munoz v. South Miami Hospital*, 764 So. 2d 854 (Fla. Dist. App. 2000) and *Saunders v. Dickens*, 151 So. 3d 434 (Fla. 2014). Both *Munoz* and *Saunders* address admission of a subsequent treating physician's testimony about what he or she would have done if the previous physician had not been negligent.

In *Munoz*, an obstetrician noted a condition during a prenatal ultrasound that went untreated after delivery, causing the child kidney damage. Plaintiffs alleged the obstetrician violated the standard of care by failing to directly inform the infant's pediatrician of the sonogram results. But the pediatrician testified he was told about the condition by the infant's parents and grandparents and would not have changed the treatment if the obstetrician had also told him. On the basis of these statements, the trial court granted summary judgment to the obstetrician due to the lack of a causation between the obstetrician's failure to inform the treating physician of the sonogram results and the child's injuries. But the *Munoz* majority concluded the treating physician's testimony could not conclusively establish the lack of causation and reversed the summary judgment. 764 So. 2d at 856-57.

The Florida Supreme Court recently approved of the result in *Munoz* in *Saunders*, 151 So. 3d at 442. There, a neurologist introduced into evidence the subsequent treating neurosurgeon's testimony that he would not have treated plaintiff differently even if the neurologist had submitted a test plaintiff alleged was required. *Saunders*, 151 So. 3d at 438. The Florida Supreme Court held "a physician cannot insulate himself or herself from liability for negligence by presenting a subsequent treating physician who testifies that

12

adequate care by the defendant physician would not have altered the subsequent care." 151 So. 3d at 442.

But these Florida cases are inapposite because plaintiff is not alleging Rosenquist deviated from the standard of care by not directly contacting Beamer, and Rosenquist is not seeking to introduce evidence that the subsequent treating physicians would not have treated Drouhard differently if Rosenquist had properly diagnosed the CT scans. As a factual matter, Rosenquist simply argues his read of the CT scan is irrelevant to the subsequent treatment because the treating physicians did not rely on it, and the uncontroverted facts bear this out.

The district court correctly granted judgment for Rosenquist because the facts as set out on summary judgment demonstrate plaintiff failed to establish causation, an essential element of plaintiff's medical malpractice claim, by failing to come forward with evidence that the patient would not have died but for Rosenquist's alleged breach of the standard of care.

Affirmed.