NOT DESIGNATED FOR PUBLICATION

No. 116,531

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EOBM ROYALTIES, LLC,
a Kansas Limited Liability Company,
*Appellee*,

v.

TERRY BAYLISS and JACK HUBER,
*Appellants*,

and

ALBERT L. COOPER,
dba Cooper Service Company,
*Defendant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed June 23, 2017.
Affirmed.

*Diana Edmiston*, of Edmiston Law Office, LLC, of Wichita, for appellants.

*Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, for appellee.

Before ATCHESON, P.J., MALONE and POWELL, JJ.

*Per Curiam*:  Arbuckle Energy, Inc. and eobm Royalties, LLC entered into two
joint ventures to drill oil and gas wells on Arbuckle's leases in Marion County, Kansas.
Unhappy with how its investment had been used in the two joint ventures, eobm
Royalties filed suit against Terry Bayliss and Jack Huber, directors and officers of

1

Arbuckle. The district court granted eobm Royalties' motion for partial summary judgment; Bayliss and Huber now appeal from this judgment. Because partial summary judgment in favor of eobm Royalties was appropriate, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, eobm Royalties invested in two joint ventures with Arbuckle. The first joint venture was referred to as the Hollywood JV. Under the Hollywood JV agreement, eobm Royalties agreed to invest $400,000 in the drilling of five oil and gas wells on Arbuckle's leases in Marion County, which were named in the agreement's attachment. Under the second joint venture agreement—referred to as the eobm JV— eobm Royalties agreed to invest $2 million in the drilling of at least five oil and gas wells on Arbuckle's leases in Marion County, which were not named in the agreement's attachment. The eobm JV agreement also provided that the $2 million investment would be made in installments of $300,000 and $1.7 million and that the first installment was not required until eobm Royalties received confirmation that five wells under the Hollywood JV had been drilled and were economically viable.

In a December 4, 2013, telephone conversation, Bayliss and Huber assured eobm Royalties that its investment would be used on its wells. That conversation was memorialized in an addendum to the Hollywood JV and eobm JV agreements. Under the addendum, eobm Royalties agreed to contribute the $2 million as required by the eobm JV agreement, even though there still was not sufficient production data to verify that the wells drilled under the Hollywood JV agreement were economically viable. Arbuckle, among other things, agreed to use eobm Royalties' $2 million investment "exclusively for [the eobm JV agreement's] particular JV Wells until the JV Wells Completion Date has been met." On December 6, 2013, eobm Royalties wired $300,000 to Arbuckle's bank account. On December 13, 2013, eobm Royalties wired the remaining $1.7 million.

Unbeknown to eobm Royalties, when the addendum was executed, Arbuckle had a combined total of about $16,000 in its bank accounts. Arbuckle also had written and was holding over $400,000 in checks to pay for prior invoices. Shortly after eobm Royalties wired both installments of its investment, those checks cleared Arbuckle's account. Combining the checks and more than $700,000 in other expenditures, Arbuckle spent over $1.2 million between December 4 and December 31, 2013. The only deposit Arbuckle received during that time—besides eobm Royalties' investment—was for about $55,000. On January 2, 2014, Arbuckle filed an intent to drill the first well under the eobm JV agreement, which was not actually drilled until March 2014.

In 2014, eobm Royalties sued Arbuckle and eventually obtained partial summary judgment. Then, in April 2015, eobm Royalties sued Bayliss and Huber individually, asserting several claims against them including fraud. Initially, Bayliss and Huber were represented by counsel, but their attorneys later withdrew. In its motion for partial summary judgment, eobm Royalties argued that Bayliss and Huber were liable for common-law fraud because (1) they were officers of Arbuckle and personally liable for its actions; (2) they knowingly misrepresented that the wired funds would be used for the wells; (3) their representation that the wired funds would be used exclusively for the wells was material to eobm Royalties; (4) their outstanding financial obligations could not have been discovered by eomb Royalties; (5) they had a legal obligation to tell eobm Royalties about their outstanding debts; (6) their communication of facts, or lack thereof, was justifiably relied on by eobm Royalties; and (7) their failure to communicate material facts resulted in eobm Royalties sustaining damages. Bayliss and Huber each filed two pro se responses.

At the motion hearing, the district court heard arguments from eobm Royalties, which amended its claim by reducing the amount of damages sought, and both Bayliss and Huber. The district court ultimately granted eobm Royalties' motion. In its journal entry, the district court stated that because Bayliss' and Huber's responses to eobm

Royalties' motion did not comply with Supreme Court Rule 141, the facts alleged in paragraphs 1 through 18 of eobm Royalties' motion were deemed uncontroverted for purposes of the motion. The district court further found that eobm Royalties was entitled to summary judgment on its fraud claim in the amount of $2 million. Bayliss and Huber retained counsel and filed a motion to reconsider, which the district court denied. The remainder of eobm Royalties' claims were voluntarily dismissed without prejudice.

Bayliss and Huber timely appeal.

### DID THE DISTRICT COURT ERR IN GRANTING EOMB ROYALTIES' MOTION FOR PARTIAL SUMMARY JUDGMENT?

A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2016 Supp. 60-256(c)(2).

> "The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]." *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

To the extent necessary, we exercise unlimited review over the interpretation of a contract. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

A.      *Supreme Court Rule 141*

Bayliss and Huber first claim that the district court erred in applying Supreme Court Rule 141 when ruling on eobm Royalties' motion for summary judgment. Supreme Court Rule 141(b)(1) (2017 Kan. S. Ct. R. 204) states in part:

"(b) A memorandum or brief opposing a motion for summary judgment must:
    (1) state—in separately numbered paragraphs that correspond to the numbered paragraphs of movant's memorandum or brief—whether each of movant's factual contentions is:
        (A) uncontroverted;
        (B) uncontroverted for purposes of the motion only; or
        (C) controverted, and if controverted:
            (i) concisely summarize the conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment; and
            (ii) provide precise references as required in subsection (a)(2)."

Rule 141(a)(2) (2017 Kan. S. Ct. R. 204) provides that the memorandum or brief must contain "for each fact . . . precise references to pages, lines and/or paragraphs or to a time frame if an electronic recording of the portion of the record on which the movant relies." If a memorandum or brief fails to comply with these requirements, the district court may deem the movant's uncontroverted factual contentions as admitted for purposes of the motion. Rule 141(f)(2) (2017 Kan. S. Ct. R. 204).

"'Rule 141 is not just fluff—it means what it says and serves a necessary purpose.' [Citation omitted.]" *Rhoten v. Dickson*, 290 Kan. 92, 104, 223 P.3d 786 (2010). A district court's decision to apply Rule 141(f)(2) is, however, discretionary. *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, Syl. ¶ 1, 809 P.2d 1216 (1991). Judicial discretion is abused when (1) no reasonable person could have taken the view

5

adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). The party alleging an abuse of discretion bears the burden of showing that the district court abused its discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

In their responses, Bayliss and Huber both agreed in part with eobm Royalties' first eight factual contentions. In paragraph 9, they stated that they contested or denied "all other claims made by the Plaintiff in their Motion" and then presented their arguments in the remaining paragraphs. Their arguments, however, did not "concisely summarize the conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment." See Rule 141(b)(1)(C)(i) (2017 Kan. S. Ct. R. 204). Although they attached several documents to their responses and provided some references, Bayliss and Huber did not provide precise references to pages or paragraphs as Rule 141(a)(2) and (b)(1)(C)(ii) require. It was not for the district court to seek out, but for Bayliss and Huber to indicate precisely what evidence supported their position. See *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987).

In their brief, Bayliss and Huber argue that their second responses did controvert key factual allegations and did substantively clarify, explain, and correct the facts related to those allegations. But they do not explain how. They also essentially argue that the district court's application of Rule 141 was unfair because they were pro se and retained counsel after the judgment was entered. We have, however, consistently stated that pro se litigants are required to follow the same procedural rules as litigants represented by counsel. See, *e.g.*, *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986). Because a reasonable person could have taken the view adopted by the district court, we conclude the court did not abuse its discretion in deeming eobm Royalties' factual contentions as admitted due to Bayliss' and Huber's failure to comply with Rule 141.

B. *Controverted Facts*

Bayliss and Huber also claim that summary judgment was inappropriate because eobm Royalties' own motion, documents, and affidavit created genuine issues of material fact. Specifically, they argue that when eobm Royalties amended its claim at the motion hearing, its attorney stated that the Hollywood JV agreement was different than the other agreements, meaning that there were legal and factual distinctions between the agreements that altered and controverted eobm's Royalties' factual contentions. They also argue that they could not have misrepresented how eobm Royalties' investment would be used because the eobm JV agreement did not specify on which wells or leases the eobm Royalties' investment was supposed to be used.

However, the record indicates that eobm Royalties never said the agreements were different, merely that the eobm JV agreement was at issue in eobm Royalties' motion and corrected the damages to $2 million because that was the amount paid under that agreement. In its reply to Bayliss' and Huber's responses, eobm Royalties also clarified that it was seeking summary judgment on its fraud claim based on the eobm JV agreement. Finally, Bayliss and Huber have not shown that even if there were differences in the agreements how those differences were "material to the conclusive issues in the case." See *Rosenquist,* 301 Kan. at 622. And they had the burden to do so. See *Stanley Bank v. Parish*, 298 Kan. 755, Syl. ¶ 1, 317 P.3d 750 (2014).

Further, the eobm JV agreement used phrases such as "plan to drill wells" and "scheduled drilling commencement date." The addendum added that eobm Royalties' $2 million investment was initially to be used exclusively for the wells under the eobm JV agreement. Bayliss and Huber admitted that in the December 4, 2013, telephone conversation they said eobm Royalties' investment "would be used exclusively on eobm's wells." So although the eobm JV agreement did not specify on which wells eobm Royalties' investment was to be used, it seems clear that it was intended to be used on

7

new wells. In fact, the district court found that fact uncontroverted in eobm Royalties' case against Arbuckle. Still, an intent to drill the first well under the eobm JV agreement was not filed until January 2, 2014. And as shown by Arbuckle's bank records, it was financially impossible for Arbuckle to spend over $1.2 million before that date without using eobm Royalties' investment—which it had represented would be used exclusively on eobm's wells. Ultimately, based on our review of the record, no genuine issues of material fact existed, making summary judgment appropriate.

C.      *Corporate Veil*

Bayliss and Huber further claim that eobm Royalties' allegations do not support piercing the corporate veil. They overlook, however, that eobm Royalties' fraud claim was not based on such a theory. Instead, eobm Royalties sought to hold Bayliss and Huber personally liable for fraud. "[A] corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured." *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 281, 624 P.2d 952 (1981). Although eobm Royalties' petition also appears to have contained a claim based on piercing the corporate veil, that claim was not the subject of eobm Royalties' motion for partial summary judgment and was later dismissed.

D.      *Damages*

Bayliss and Huber finally claim that summary judgment on the issue of damages was inappropriate, arguing that the damages in this case should have been offset by the amount of damages awarded in eobm Royalties' lawsuit against Arbuckle. But they do not cite any supporting authority, which is akin to failing to brief the issue. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). And issues not briefed are deemed waived or abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Nevertheless, whatever assets Arbuckle may have lost in a previous case were irrelevant in determining the amount of damages to be awarded in this case where eobm Royalties sought to hold Bayliss and Huber personally liable.

Therefore, we conclude that the district court did not err in granting eobm Royalties' motion for partial summary judgment.

Affirmed.