NOT DESIGNATED FOR PUBLICATION

No. 116,084

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PHH MORTGAGE CORPORATION,
*Appellee*,

v.

SHANNON J. ORTH, *et al.*,
*Appellants*.

MEMORANDUM OPINION

Appeal from Morton District Court; LINDA P. GILMORE, judge. Opinion filed July 28, 2017. Affirmed.

*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez Law Office, LLC, of Liberal, for appellant.

*Garrett M. Gasper* and *Linda S. Tarpley*, of Shapiro & Kreisman, LLC, of Fairway, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and SCHROEDER, JJ.

*Per Curiam*: Shannon J. Orth and Terra Orth (the Orths) appeal the district court granting PHH Mortgage Corporation's (PHH) motion for summary judgment. Upon review, we find no material facts in dispute that would deny PHH's motion for summary judgment. Since the district court properly granted PHH's motion for summary judgment on all issues raised, we affirm.

1

FACTS

The Orths signed a promissory note for $125,750 to purchase their home on April 16, 2009. On the same day, as collateral for the note, the Orths also executed a real estate mortgage. Both the note and the mortgage identified PHH as the lender. Mortgage Electronic Registration Systems, Inc. (MERS), acting solely as a nominee for the lender, was named as the mortgagee.

On June 12, 2013, PHH filed a petition for foreclosure alleging the Orths defaulted on the loan. The Orths answered, denying they defaulted on the loan and counterclaiming for violations of the Kansas Consumer Protection Act (KCPA). Specifically, the Orths alleged William F. Davis, an agent of PHH, contacted them and told them they did not need to file an answer or consult with an attorney. They alleged Davis told them he had inside connections with PHH and could suspend the foreclosure proceeding if they made a payment. They alleged Davis' and PHH's actions violated K.S.A. 2016 Supp. 50-626 and K.S.A. 50-627, which prohibit deceptive acts and practices and unconscionable acts and practices respectively.

On October 1, 2013, the Orths filed a "Motion to Stop the Harassment by the Plaintiff." They alleged PHH was sending agents onto the property to leave notes, take pictures, and harass them. The Orths also alleged PHH falsely claimed the property was abandoned and continued to contact them despite knowing counsel represented them. The record reflects the motion was never set for hearing before the district court.

On June 30, 2014, the Orths filed a motion to compel discovery, which included numerous requests for admissions. PHH never answered the request for admissions or responded to the motion to compel. Pursuant to K.S.A. 2016 Supp. 60-236(a)(3), the district court deemed the delinquent requests for admissions admitted.

On July 27, 2015, the Orths filed an amended answer and a counterclaim adding a claim for intentional infliction of emotional distress based on PHH's alleged continued harassment. On January 20, 2016, they filed a motion for punitive damages alleging PHH's conduct was willful, malicious, and fraudulent.

On January 22, 2016, PHH moved for summary judgment. The district court found PHH held the note and mortgage. It found Davis was not PHH's employee or agent. The district court also found no medical professional had given an opinion that the Orths' physical symptoms resulted from PHH's actions. The district court granted summary judgment on PHH's foreclosure claim because the Orths defaulted on the note. It also granted PHH summary judgment on the Orths' counterclaims, finding there was no evidence Davis was PHH's agent and the Orths' intentional infliction of emotional distress claim did not present a material fact in dispute. Since it granted PHH summary judgment on the Orths' counterclaims, the district court also denied their motion for punitive damages.

The Orths appealed.

ANALYSIS

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

3

must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013).

*PHH held both the note and mortgage.*

On appeal, the Orths contend that whether PHH validly held both the note and the mortgage was a genuine issue of material fact precluding summary judgment. They argue the note and mortgage were transferred to MERS and there is no evidence MERS transferred the note back to PHH.

> "[I]n order to grant summary judgment in a mortgage foreclosure action, the district court must find undisputed evidence in the record that the defendant signed a promissory note secured by a mortgage, that the plaintiff is the valid holder of the note and the mortgage, and that the defendant has defaulted on the note." *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 218, 286 P.3d 1150 (2012).

To support their argument, the Orths point out that Paragraph 2 of PHH's petition claims they executed and delivered the note and mortgage to MERS, a nominee for PHH. However, in its motion for summary judgment, PHH alleged the Orths "made, executed, and delivered to *Plaintiff* a first mortgage note." (Emphasis added.) The Orths admitted this fact was uncontroverted. Further, Paragraph 5 of PHH's motion for summary judgment states:

"That by virtue of an assignment and possession of the original note Plaintiff is the holder of the note and mortgage which are the subject matter of this foreclosure action; said assignment was duly recorded on May 24, 2013, in the mortgage records in the Office of the Register of Deeds of Morton County, Kansas, in Book 173 at Page 302."

In their response to PHH's motion for summary judgment, the Orths contended Paragraph 5 was controverted, stating only: "This statement requires a legal conclusion to be determined by this Court." Pursuant to K.S.A. 2016 Supp. 60-256(e)(2), a party opposing summary judgment must provide evidence establishing a dispute as to a material fact. *Drouhard-Nordhus*, 301 Kan. at 622. The Orths did not provide any evidence disputing the factual allegations in Paragraph 5 nor did they argue in their response PHH did not possess the note and mortgage. As a result, these facts are deemed admitted. Since the Orths admitted they delivered a first mortgage note to PHH and failed to provide evidence showing PHH did not hold the note and mortgage, there is no genuine issue of material fact. Since PHH held both the note and the mortgage at the time of filing the petition, PHH had standing to foreclose the note and mortgage on the subject property. The district court did not err in granting PHH's motion for summary judgment foreclosing the mortgage, finding PHH held both the note and mortgage.

*No Genuine Issue of Material Fact Regarding Modification of Their Loan*

Citing *Bryant Manor LLC v. Bank of America, N.A,* 434 B.R. 629, 633 (Bankr. D. Kan. 2010), the Orths allege K.S.A. 16-118(c) is inapplicable because this case deals with "the terms, negotiations, and payments on [a] promissory note and a real estate mortgage." Pursuant to K.S.A. 16-118(a), a credit agreement is not enforceable "unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor."

5

A credit agreement is:

"[A]n agreement by a financial institution to lend or delay repayment of money, goods or things in action, to otherwise extend credit or to make any other financial accommodation. For purposes of this act the term 'credit agreement' does not include the following agreements: Open-end or closed-end promissory notes, real estate mortgages, security agreements, guaranty agreements, letters of credit, deposit account agreements, agreements in connection with deposit accounts for the payment of overdrafts, agreements in connection with student loans insured or guaranteed pursuant to the federal higher education act of 1965 and acts amendatory thereof and supplementary thereto, and agreements in connection with 'lender credit cards' as defined in the uniform consumer credit code." K.S.A. 16-117(a).

The Orths' reliance on *Bryant Manor* is misplaced. In *Bryant Manor*, the debtor brought an adversary proceeding alleging Bank of America negligently misrepresented that defaulting on its loan was a viable approach to restructuring the loan, failed to negotiate in good faith, and breached its duty of good faith and fair dealing. Bank of America moved to dismiss, arguing K.S.A. 16-118(a) barred Bryant Manor's claims. The bankruptcy court noted K.S.A. 16-118 was simply inapplicable because Bryant Manor's allegations surrounded the promissory note and mortgage. It denied the motion to dismiss in part because

"Debtor's Complaint does not seek damages arising out of any alleged oral credit agreement. Instead, it seeks damages related to alleged misrepresentations made about the proper course of conduct to follow in relation to the already existing written contract. Debtor claims that Bank of America 'induced the Debtor to act to its detriment by misrepresenting facts surrounding the Note and the Mortgage.' *There is no question here about whether Bank of America agreed to lend money, or the terms and conditions of any such agreement, which is the purpose behind K.S.A. 16-118.*" (Emphasis added.) *Bryant Manor, LLC*, 434 B.R. at 634.

6

Unlike in *Bryant Manor*, the Orths' response to PHH's motion for summary judgment alleged an oral agreement separate from the promissory note. Specifically, the Orths alleged they made payments in exchange for PHH's assurance the payments would save their house from foreclosure. They also alleged they submitted payments in order to modify the contract.

The problem with the Orths' position is they fail to recognize the requirements of K.S.A. 16-118(a) and (c), which provide:

"(a) A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged credit agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor.

. . . .

"(c) Failure to comply with provisions of subsections (a) and (b) shall preclude an action or defense based on any of the following legal or equitable theories: (1) An implied agreement based on course of dealing or performance or on a fiduciary relationship; (2) promissory or equitable estoppel; (3) part performance; or (4) negligent representation."

Additionally, the Orths fail to cite or recognize our Supreme Court decision *Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, Syl. ¶ 1, 962 P.2d 491 (1998), which states:

"K.S.A. 16-118 operates as a statute of frauds and states that no action may be maintained on a credit agreement unless it is in writing and signed by both the debtor and creditor. The intent of the statute is to insure there is written evidence of credit agreements and to prevent lawsuits based on disputed oral agreements to lend money or the disputed terms for lending the money."

Like the oral loan extension agreement claimed in *Bittel*, the Orths allege an oral agreement to modify the original promissory note that changed the repayment structure. The alleged oral modification meets the definition of a credit agreement under K.S.A. 16-117(a), so K.S.A. 16-118(a) controls. Since the Orths have not produced a written copy of the alleged modification signed by both parties, they may not defend on the basis of an implied agreement based on course of dealing or performance. See K.S.A. 16-118(c). The Orths have not raised a genuine issue of material fact, and the district court did not err in granting PHH's motion for summary judgement on the Orths' claim the note repayment structure was modified by an oral agreement.

*The KCPA claim was ripe for summary judgment.*

The Orths contend there is a genuine issue of material fact regarding whether PHH violated the KCPA. In their counterclaim, the Orths alleged PHH and Davis violated the KCPA by engaging in deceptive and unconscionable acts and practices. The KCPA shall be liberally construed "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b).

In their brief, the Orths identify several facts deemed admitted pursuant to K.S.A. 2016 Supp. 60-236(a)(3) and a district court order, including:

> "PHH told the Orths if the Orths work with PHH and request a modification no foreclosure action will be taken against the Orths. PHH knew that the Orths were being represented by an attorney, regardless PHH kept communicating with the Orths directly after the foreclosure action had been filed and told the Orths that they did not need to file an Answer to PHH's Petition. Also, PHH claimed in its Petition that the Orths' residential property was abandoned and no one lived there, and then PHH requested a default judgment based upon the false allegations in its Petition."

8

Although the Orths identified these facts as "additional relevant facts" in their response to PHH's motion for summary judgment, *they did not argue these facts created a genuine issue of material fact in their response* to the motion for summary judgment. Generally, issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court warned that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. Thereafter, the Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). The Orths did not raise this issue below or comply with Supreme Court Rule 6.02(a)(5). They have waived or abandoned this argument.

Before the district court, the Orths solely argued summary judgment on the KCPA claim was improper because whether Davis—who the Orths allege committed deceptive and unconscionable acts during the foreclosure process—was an agent of PHH was a genuine issue of material fact. The district court found there was no evidence Davis was an agent of PHH, except the Orths' assertions he had inside connections with PHH, and granted PHH's motion for summary judgment on the claim.

The record contains no evidence showing Davis is an actual agent of PHH. Davis is not a PHH employee—he appeared to be an employee of United Guarantee Corporation, the private mortgage insurer—and PHH has no records or contracts related to Davis. Further, Davis never performed services for PHH.

Similarly, there is no evidence in the record suggesting PHH intentionally or by want of ordinary care induced or permitted the Orths to believe Davis was its agent. In their response to the summary judgment motion, the Orths argued:

"Davis told them specifically that he had the connections or the ability, meaning he had the authority, to suspend the foreclosure action filed by the Plaintiff. As a matter of fact, *Davis assured* the Defendants of his authority by offering to connect the Defendants with the Plaintiff to verify this." (Emphasis added.)

However, a party opposing summary judgment may not simply rely on the allegations or denials in its pleadings; it must provide an affidavit or other evidence showing a genuine issue for trial. K.S.A. 2016 Supp. 60-256(e)(2). The Orths did not provide an affidavit or any evidence supporting the allegations in its response to PHH's motion for summary judgment. The district court did not err when it granted summary judgment in favor of PHH on the Orths' KCPA claim.

*There were no material facts to support the Orths' intentional infliction of emotional distress claim.*

The Orths contend the district court erred when it granted summary judgment on their intentional infliction of emotional distress claim. To establish a claim for intentional infliction of emotional distress, the plaintiff must prove: "(1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe." *Valadez v. Emmis Communications*, 290 Kan. 472, 476, 229 P.3d 389 (2010). However, there are two threshold questions a court must determine:

"(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. [*Roberts v.*] *Saylor,* 230 Kan. [289,] 292-93, 637 P.2d 1175 [(1981)]." *Valadez*, 290 Kan. at 477.

10

Here, the district court found a genuine issue of fact existed regarding whether PHH's conduct was so extreme or outrageous it went beyond the bounds of decency. PHH did not appeal this finding. Accordingly, we accept that finding. Thus, the only issue left for us to consider is whether the emotional distress was so severe that no reasonable person should be expected to endure it.

A plaintiff need not suffer bodily harm to prevail on a claim for intentional infliction of emotional distress; the claim merely requires extreme and severe mental distress which is causally connected to the defendant's outrageous conduct. *Lovitt v. Board of Shawnee County Comm'rs*, 43 Kan. App. 2d 4, 14, 221 P.3d 107 (2009).

> "'There is no laundry list of what qualifies as the requisite level of severity [of emotional distress]. . . . [I]t is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere.
>
> "'On the other hand, physical symptoms probably would suffice, and if purely mental symptoms are all that apply . . . those symptoms should at least be long lasting and debilitating.' Boston, Kline & Brown, Emotional Injuries: Law and Practice § 22:7 (1998).
>
> "This conclusion is consistent with the determination by this court that the absence of psychiatric or medical treatment, including medication, weighs against a finding of extreme emotional distress. *Saylor*, 230 Kan. at 296." *Valadez*, 290 Kan. at 479.

The Orths cite *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024 (1991), for the proposition that a defendant's conduct may be outrageous enough to show a plaintiff's severe and extreme mental distress. Vu hired Sherry Taiwo to bring Vu's daycare center into compliance with state laws, but she resigned shortly thereafter. When Sherry went to collect her last paycheck, her pay had been reduced and her hours cut. Vu told Sherry she was going to inconvenience her since she quit.

11

Vu repeatedly made false accusations to police trying to get Sherry and Obafemi Taiwo arrested because Sherry quit her job. She induced an employee to lie about being an eyewitness to the alleged vandalism to bolster her claim. Even after being confronted because the eyewitness recanted, Vu maintained her story and challenged the officer to prove the Taiwos did not vandalize her vehicle. The Taiwos faced possible arrest and jail time without a means of proving their innocence except by taking a polygraph test. No reasonable person should be expected to endure that conduct because they quit a job. The Kansas Supreme Court held "the enormity of the outrage created by Ms. Vu's conduct is sufficient to satisfy the second threshold requirement of severe and extreme mental distress." 249 Kan. at 596.

However, *Taiwo* is distinguishable. Even in the light most favorable to the Orths, PHH's conduct is not as outrageous as Vu's. While PHH's conduct *may* have been extreme or outrageous, as the district court found, PHH's conduct did not rise to the same level as in *Taiwo*; it is not so severe that no reasonable person should be expected to endure it. The Orths never argued their physical ailments were severe and extreme. They provided no evidence the acts of PHH caused their ailments. The Orths failed to present any medical evidence to support their claim of intentional infliction of emotional distress caused by the acts of PHH. As such, the district court did not err when it granted summary judgment to PHH.

*No Compensatory Damages; No Punitive Damages*

The Orths argue the district court erred when it denied their motion for punitive damages. However, punitive damages cannot be recovered without an award of compensatory damages. *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 982, 59 P.3d 325 (2002). The district court denied the motion for punitive damages because "the court does not find defendant will probably prevail on this claim for the reasons stated in the earlier portions of this opinion." In the earlier portions of its opinion, the

12

district court granted PHH's motion for summary judgment on both the Orths' KCPA claim and their intentional infliction of emotional distress claim. Since the district court granted PHH's motion for summary judgment, the Orths were not entitled to compensatory damages; therefore, they are likewise not entitled to punitive damages. The district court did not err when it denied the Orths' motion for punitive damages.

Affirmed.